UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ CALDERÓN,<br><br>   **Plaintiff,**<br><br>v.<br><br>INTERNAL MEDICINE CANÓVANAS GROUP CORP., et al.,<br><br>   **Defendants.** | **Civil No. 22-1240 (ADC)** |

## OPINION AND ORDER

Before the Court is a renewed motion to dismiss and for summary judgment, as well as an accompanying statement of uncontested material facts ("SUMF"), filed by defendant Internal Medicine Canóvanas ("Internal Medicine" or "defendant") on January 10, 2025. **ECF Nos. 55, 55-1**. Plaintiff Luz Calderón ("Calderón" or "plaintiff") filed a response in opposition on February 11, 2025, with an accompanying opposing statement of uncontested material facts ("OSUMF"). **ECF Nos. 62, 62-1**. Internal Medicine filed a reply on February 24, 2025. **ECF No. 65**.

For the reasons set forth below, the defendant's motion to dismiss and for summary judgment is **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

### I.   Procedural and Factual Background

On May 25, 2022, defendant removed the instant action filed by plaintiff in the Puerto Rico Court of First Instance, Case No. CA2022CV00898. **ECF No. 1**. Plaintiff sued defendant for

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. and the Rehabilitation Act of 1973 (the "Rehabilitation Act"). Specifically, plaintiff alleges a violation of 42 U.S.C. § 12182(b)(2)(A)(ii) (reasonable modifications in policies, practices, or procedures) and 42 U.S.C. § 12182(b)(2)(A)(iv) (architectural barriers). For these alleged violations, plaintiff seeks injunctive relief and damages pursuant to "42 U.S.C. § 12188 due to [defendant's] noncompliance with the provisions of Title III . . . [and due to] violations [of] Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. . . ." **ECF No. 12-1** (certified translation of summons and complaint), at 1.

Plaintiff has limited mobility and walks aided by a walker or a cane. **ECF No. 62-2**, Exhibit (Decl. of Luz Calderón), ¶ 2; OSUMF, **ECF No. 62-1**, ¶ 21. She suffers from the following conditions: (1) Multiple screws in her left foot; (2) injury to her left shoulder, which causes ongoing pain and limits her range of motion; (3) effusion in her left knee, which severely affects her ability to move and causes chronic discomfort; (4) unspecified injury to her left shoulder and upper arm, which further restricts her physical capacity and contributes to her ongoing pain. *Id*.

Plaintiff claims that on February 3, 2022, she visited the offices of Internal Medicine. **ECF No. 12-1**, ¶ 12. During this visit, she alleges that she encountered "tangible barriers" and that the "medical center staff engaged in discriminatory treatment." *Id.*, ¶ 13. Plaintiff claims that the seventeen barriers she encountered during her visit to the offices of Internal Medicine were "directly related to [her] disability" and "interfere[d] with her full and equal access" to Internal

Medicine's facilities. *Id.*, ¶¶ 16-17. In the complaint, plaintiff suggests a remedy for each of these architectural barriers to bring them into compliance with the ADA guidelines. *Id*.

Defendant answered the complaint on June 22, 2022. **ECF No. 11**. Subsequently, the parties conducted discovery. On February 13, 2024, defendant filed a motion for summary judgment and to dismiss under Fed. R. Civ. P. 56 and 12, respectively, as well as a proposed SUMF. **ECF Nos. 37, 37-1**. Plaintiff filed an opposition brief and an OSUMF on February 21, 2024. **ECF Nos. 38, 38-1**. On June 11, 2024, the Court issued an Opinion and Order denying defendant's motions but granting defendant time to renew the request for summary judgment and/or dismissal and to properly support and address the facts contained therein. **ECF No. 39**. In that Opinion and Order, the Court also ordered plaintiff to "show cause why the Court should not dismiss her tort claims and 'nominal damages' claim." *Id*., at 9. Accordingly, on July 2, 2024, plaintiff moved to "formally dismiss her [tort] claims for damages and nominal damages," **ECF No. 40**, at 1. The Court noted this dismissal of plaintiff's damages claims. **ECF No. 43**.[1]

Subsequently on January 10, 2025, defendant filed a renewed motion to dismiss and for summary judgment and an accompanying SUMF. **ECF Nos. 55, 55-1**. Defendant's motion

---

[1] The Court notes here that plaintiff's claims under the Rehabilitation Act requested relief in the form of damages and declaratory relief. **ECF No. 12-1**, at ¶¶ A ("A declaratory judgment providing that the Respondent has violated the requirements of the Rehabilitation Act of 1973. . . "), E ("Compensatory damages under the Rehabilitation Act."), F ("Nominal damages . . . . [for] violation of the Rehabilitation Act. . . ."). Plaintiff voluntarily dismissed her claims for damages, **ECF Nos. 40, 43**, and the Court declines herein to grant declaratory judgment. *See El Dia, Inc. v. Hernandez-Colón*, 963 F.2d 488, 493 (1st Cir. 1992) ("[D]eclaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201, is discretionary."). Thus, the Court does not address plaintiff's Rehabilitation Act claims in this Opinion and Order.

requests, *inter alia*, that the Court "dismiss this case as the allegations of the Complaint are moot. . . ." *Id.*, at 4.[2] In support of this renewed motion, defendant submitted an expert report from Alvin Irizarry, an ADA inspector. **ECF No. 55-2**. On February 11, 2025, plaintiff filed an opposition brief and an OSUMF. **ECF No. 62-1**. Defendant replied on February 24, 2025. **ECF No. 65**.

## II. Legal Standard

### A. Mootness

A motion to dismiss on mootness grounds is properly asserted under Fed. R. Civ. P. 12(b)(1) because it constitutes a challenge to the court's subject-matter jurisdiction. *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) ("Mootness is a ground which should ordinarily be decided in advance of any determination on the merits."). Motions brought under Fed. R. Civ. P. 12(b)(1) are subject to the same standard of review as Fed. R. Civ. P. 12(b)(6) motions. *Negrón-Gaztambide v. Hernández-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). As with a 12(b)(6) motion to dismiss, when reviewing a Rule 12(b)(1) motion to dismiss, courts "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according to the plaintiff the benefit of all reasonable inferences." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir.

---

[2] Defendant further claims that the complaint should be dismissed due to plaintiff's "failure to join an indispensable party." **ECF No. 55**, at 4. Although defendant's motion does not style the mootness claim as a 12(b)(1) claim, the court must do so in order to assess the threshold issue of the Court's jurisdiction over plaintiff's claims. *Snell v. Neville*, 998 F.3d 474, 485 (1st Cir. 2021) ("Because mootness touches upon jurisdictional issues (i.e., whether we can even hear the merits), we address it before his substantive claims. . . ."). If the Court lacks jurisdiction, this bars the Court's assessment of any further claims. *Id*.

2015) (cleaned up). The burden of establishing mootness rests with the party invoking the doctrine. *See Am. C.L. Union of Mass.*, 705 F.3d at 52.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court may consider all pleadings submitted by the parties. *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). The Court "is not restricted to the face of the pleadings but may consider extra-pleading materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *Fernández-Molinary v. Industrias la Famosa, Inc.*, 203 F. Supp. 2d 111, 114-15 (D.P.R. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).

Mootness refers to when the issues in a case "are no longer 'live' or the parties lack a legally cognizable interest in the outcome, such that it is impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Ruiz*, 83 F.4th 68, 73 (1st Cir. 2023) (quoting *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191-92 (1st Cir. 2022) (cleaned up)). The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). It is a corollary of the "Case" and "Controversy" jurisdictional requirement contained in Article III of the United States Constitution. *Id.*

The burden of establishing mootness lies with the party asserting its application. *See Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (citing *Conservation Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004)). Where "the only conceivable basis for a finding of mootness . . . is the [defendant's] voluntary conduct," the burden of

establishing mootness is a heavy one. *West Virginia v. EPA*, 597 U.S. at 719 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (cleaned up). This is because "a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *See Am. C.L. Union of Massachusetts*, 705 F.3d at 54 (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)). Therefore, "[i]t must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Betancourt-Colon v. Arcos Dorados Puerto Rico, LLC*, No. CV 21-1311 (BJM), 2024 WL 124220, at *3 (D.P.R. Jan. 11, 2024) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

**B.   Summary Judgment**

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and it is "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); Fed. R. Civ. P. 56(a). Although the court states the facts in the light most favorable to the party against whom summary judgment

is entered, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.*

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id*. Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced by the parties' separate statement of facts." The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006). If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. *Quintana-Dieppa v. Dep't of*

*Army*, 130 F.4th 1, 8 (1st Cir. 2025) (citing D.P.R. Loc. R. 56(c)). Where a supported fact is not properly controverted, it "shall be deemed admitted." *Id*. Litigants thus ignore Local Rule 56(c) at their peril. *See López-Hernández*, 64 F.4th at 26.

## III.  Discussion

### A.  Uncontested Material Facts

The Court draws the following facts from the pleadings, admissions, and statements of facts submitted by the parties that comply with L. Civ. R. 56, and their supporting evidence. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the Court reviewed every statement submitted by the parties, it will only consider and include in this Opinion & Order those facts that are uncontested and material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56. Any proposed fact not included below is deemed immaterial and/or contested.

1. Plaintiff suffers from the following conditions: (1) Multiple screws in her left foot; (2) injury to her left shoulder; (3) effusion in her left knee; (4) unspecified injury to her left shoulder and upper arm. **ECF No. 62-2**, Exhibit (Decl. of Luz Calderón), ¶ 2.

2. Due to these conditions, plaintiff uses a walker or a cane to assist with her mobility. *Id*.; OSUMF, **ECF No. 62-1**, ¶ 21.

3. Plaintiff visited Internal Medicine's facilities in 2021 and 2022. SUMF, **ECF No. 55-1**, ¶ 22.1; **ECF No. 64-1**, ¶ 3.

4. Plaintiff encountered difficulty using the bathroom at the facilities because "there were no grab bars." SUMF, **ECF No. 55-1**, ¶ 22.4.

5. Plaintiff did not complain to Internal Medicine that she encountered any barriers during her visit to the Internal Medicine facilities on February 3, 2022, prior to filing her complaint. *Id.*, ¶ 20.[3]

6. Defendant is a medical services provider. *Id.*, ¶ 4.

7. It is uncontested that Internal Medicine's offices are a place of public accommodation under the ADA because they are open to the public and their operation affects business as a medical services facility. *Id.*, ¶ 4.

8. The facilities were built in 1999, and Internal Medicine leases the property where the offices are located. *Id.*, ¶¶ 5, 18.

9. After plaintiff filed her complaint, Internal Medicine made modifications to the property to bring elements of the property into compliance with the 2010 ADA Accessibility Guidelines ("ADAAG"). *Id.*, ¶ 24.

---

[3] Although not properly presented by either party (and therefore not included as an uncontested material fact), the Court acknowledges that plaintiff experienced an unpleasant and upsetting encounter during a 2021 visit with an employee named Doris. Plaintiff alleges and complains that Doris was rude to her and, on December 20, 2021, impeded her customary access to the accessible ramp at the Internal Medicine facilities as she was exiting the building. SUMF, **ECF No. 55-1**, ¶ 22.3; OSUMF, **ECF No. 62-1**, ¶ 21. The Court has gone beyond its duty under the anti-ferret rule to examine the entire summary judgment record in order to learn more about this incident. *See López-Hernandez*, 64 F.4th at 26. Based on this investigation, the Court found that Plaintiff spoke and complained to her physician at some point about the rudeness of and incident with Doris. SUMF, **ECF No. 55-1**, ¶ 22.5, **ECF No. 64-1**, at 1. Plaintiff, however, does not claim any relief premised on this incident as an alleged ADA violation. *See* **ECF No. 12-1**; *infra*, § III.C.

B.  **Defendant's Modifications and Mootness**

One of the questions before the Court is whether Internal Medicine's modifications to its premises suffice to moot certain of plaintiff's claims for relief, and thereby strip the Court of subject-matter jurisdiction over these claims.

Under 42 U.S.C. § 2000a-3(a), which is incorporated into Title III of ADA by 42 U.S.C. § 12188, the remedies available to plaintiff are limited to "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order…." 42 U.S.C. § 2000a-3(a). "By the plain terms of that provision, a private party may obtain only forward-looking relief; damages for past harms are not available." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006).

In her complaint, plaintiff requests that, *inter alia,* the Court grant the following forward-looking relief:

> [A] permanent statutory injunction in accordance with the provisions of 42 USC § 12188 (a) (2) and 28 CFR § 36.504 (a), ordering the Respondent to take all necessary measures to remove the architectural barriers described above and to bring its facilities into compliance with the requirements of the ADA and its implementing regulations, so that its facilities are completely and independently accessible to individuals with limited mobility. . . .

**ECF No. 12-1**, at 24.[4] Plaintiff's specific allegations of ADA non-compliance against

---

[4] Plaintiff also requested a declaratory judgment, compensatory damages, nominal damages, and attorney' fees and costs. *See* **ECF No. 12-1**, at 20-21. As discussed, *supra,* n. 1, plaintiff voluntarily dismissed the damages claims. *See* **ECF Nos. 43, 45**. Thus, only the ADA claims for declaratory judgment, a permanent statutory injunction, and attorney's fees remain. **ECF No. 12-1**, at 24.

Internal Medicine include that each of the following does not comply with the 2010 ADAAG:[5]

- The "positioning of the signs in the parking spaces"

- The "slope of the ramps on the access route to the accessible entrance"

- The "configuration and dimensions" of curb ramps in the access route

- The "existing physical configuration" of the "access route"

- The lack of "signs indicating the location of the accessible entrance" and the lack of an "International Symbol of Accessibility" at the accessible building entrance

- The "dimensions and spaces" of the checkout aisle and information counter

- The "configuration and dimensions" of the service counter

- The "[n]on-accessible bathrooms lack . . . signage"

- The "[s]pace around the sink" in the bathroom

- The "space under the sink"

- The "height of the sink"

---

[5] There are two ADAAG, a 1991 and a 2010 version, which apply respectively depending on the date of construction. *See* 28 C.F.R. §§ 36.406(a)(1)-(a)(3). For buildings the construction of which commenced prior to September 15, 2010, the 1991 ADAAG applies. *See* 28 C.F.R. §§ 36.406(a)(1). The Internal Medicine facilities were constructed in 1999, and thus the 1991 ADAAG should apply. See SUMF, **ECF No. 55-1**, ¶ 18. Both parties, however, refer extensively to the 2010 ADAAG. *See* **ECF No. 12-1**, ¶ 2; **ECF No. 55-2**. Thus, for purposes of this analysis, the Court will assume the 2010 Guidelines apply.

- The "bottom of the sink is not configured to protect against contact with objects located under the sink"

- The "positioning and height" of the bathroom soap dispenser

- The "center of the toilet is away from the side wall"

- The "space around the toilet"

- The "existing configuration on the side wall and behind the toilet"

- The "side grab bar and the rear grab bar, the existing configuration on the side wall and behind the toilet"

*Id.*, at 8-11.

Internal Medicine, however, claims that it has "made nonstructural modifications to the property to improve accessibility," including "accessible counters for services and information area, patient's accessible bathroom, internal elevator to access the second floor[,] and marked waiting accessible areas." **ECF No. 55**, at 16-17. If these modifications have made certain of the facilities ADA compliant, then the corresponding claims may be moot.

As evidence of these modifications, Internal Medicine provided an expert report from Alvin Irizarry, an independent ADA inspector (the "Irizarry Report"). **ECF No. 55**, at 17-19; **ECF No. 55-2**. The Irizarry Report states that:

- There are "[v]isible ADA Signs indicating ramp access to the facility" and "[v]isible ADA signs at the entrance door indicating where an accessible entrance is located." **ECF No. 55-2**, at 72, 73, Items 2, 6.

- "Accessible toilet signs that indicate the location of the nearest bathroom. . . ." *Id*., at 74, Item 9.

- "The main service counter ha[s] a part no higher than 36" above the floor and 36" wide." *Id*., at 74, Item 8.

- There are "signs for ace[s]sible checkout area." *Id*.

- There are "[g]rab bars provided in toilet side wall. In addition[,] the grab bar for the back wall is 36" long. The side wall gra[b] bar is . . . 42" long." *Id*. at 76, Item 17.

Plaintiff, in her opposition brief, argues that the Irizarry Report is "riddled with contradictions, inconsistencies, and deficiencies." **ECF No. 62**, at 6. Yet aside from these allegations, plaintiff submits neither any expert report to rebut the findings of the Irizarry Report nor any factual evidence to rebut the claimed modifications. *Id*. Furthermore, while plaintiff's opposition alleges that the modifications defendant made are "not enough to establish mootness" without "formal policies, institutionalized procedures, and ongoing maintenance commitments," she cites to no case law in support of this alleged ADA compliance standard. *Id*.

The case law of this Court is clear that modifications to bring premises into compliance with the ADA are entirely sufficient to render a claim moot, particularly if defendant has no history of ADA non-compliance. *See Medina-Rodríguez v. Canóvanas Plaza Rial, Econo Rial, LLC*, No. CV 17-1943 (BJM), 2021 WL 4485652, at *10 (D.P.R. Sept. 30, 2021), *aff'd sub nom. Medina-Rodríguez v. Canóvanas Plaza Rial*, No. 21-1928, 2024 WL 4880751 (1st Cir. June 18, 2024).

Moreover, plaintiff's argument that defendant's modifications to the premises were "not a genuine commitment to compliance but rather a tactical attempt to evade liability by artificially creating the appearance of mootness" is unsupported by the record and entirely out of step with the law of this Court. **ECF No. 62**, at 7. *Medina-Rodríguez*, the very case to which plaintiff cites, holds that responding to an ADA violation by remedying the alleged violation is an entirely appropriate means of illustrating compliance with the ADA. *Medina-Rodríguez*, 2021 WL 4485652, at *12 (holding plaintiff's ADA claim was moot after "defendants tried to rectify all purported ADA issues once Medina's lawsuit first called their attention to the issues").

Defendant's modifications to certain parts of the premises bring them into compliance with the 2010 ADAAG. Defendant has marked the accessible entrances to the building and bathroom with the international symbol of accessibility. **ECF No. 55-2**, at 72, 73, Items 2, 6; ADAAG §§ 216.6; 216.8. The checkout counter is marked with the international symbol of accessibility and the counter height is 36" above the ground, below the 38" maximum of the ADAAG. **ECF No. 55-2**, at 74, Item 8; ADAAG §§ 216.11; 904.3.2. The grab bars installed in the bathroom comply with ADAAG specifications. **ECF No. 55-2**, at 76, Item 17; ADAAG §§ 604.5.1; 604.5.2.

Having examined the parties' submissions, the Court is of the view that the modifications undertaken by Internal Medicine have brought parts of the premises into compliance with the 2010 ADAAG. As such, the Court is of the view that, regarding the international symbols of accessibility, counter, and bathroom grab bar claims, there is no longer a case or controversy for

this Court to adjudicate or an injunction that would afford plaintiff any effective relief. Pursuant to Fed. R. Civ. P. 12(b)(1), the Court lacks subject matter jurisdiction over these claims against Internal Medicine, for which reason they shall be **DISMISSED WITH PREJUDICE**. Several of plaintiff's claims remain, which shall be addressed below on summary judgment.

**C.     Summary Judgment: Failure to Make Out a *Prima Facie* Title III ADA Claim**

Plaintiff alleges that defendant violated two provisions of Title III of the ADA: Section (b)(2)(A)(ii) and (b)(2)(A)(iv). *See* **ECF No. 12-1**, at 12-20. As to (b)(2)(A)(ii), plaintiff claims that defendant has failed to remove architectural barriers that render the facility inaccessible. As to (b)(2)(A)(iv), plaintiff alleges that defendant failed "to make reasonable modifications in their policies, practices, or procedures at the Property" to remove barriers to accessibility. *Id*., ¶¶ 43-44.

To establish a *prima facie* Title III case under the ADA, a plaintiff "must demonstrate that (1) he or she has a qualified disability under the ADA, (2) the defendant operates a place of public accommodation, and (3) the plaintiff was discriminated against as a result of his or her disability." *Medina-Rodríguez v. Fernández Bakery, Inc.*, 255 F. Supp. 3d 334, 341 (D.P.R. 2017). Disability discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures" and "a failure to remove architectural barriers, and communication barriers that are structural in nature." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n. 38 (2001).

Under Title III of the ADA, a reasonable-accommodation plaintiff must make a six-part showing:

> (1) that she comes within the protections of the ADA as a person with a disability; (2) that the defendant's establishment is subject to the mandates of Title III as a place of public accommodation; (3) that the defendant has a discriminatory policy or practice in effect; (4) that she requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; (5) that the requested modification—or a modification like it—was necessary to afford that access; and (6) that the defendant nonetheless refused to modify the policy or practice.

*See Doe v. Rhode Island Interscholastic League*, No. 24-1619, 2025 WL 1419571, at *4 (1st Cir. May 16, 2025).

Neither party disputes that plaintiff is disabled or that defendant operates a place of public accommodation. *See* Uncontested Material Facts ("UMF"), ¶¶ 1-2, 6-7. During plaintiff's visits to Internal Medicine, she had difficulty standing and sitting in the bathroom because it lacked grab bars, which constitutes discrimination based on her disability. UMF, ¶¶ 3-4. Prior to filing her complaint, however, plaintiff did not request any reasonable modification from Internal Medicine regarding these allegedly non-compliant ADA barriers. UMF ¶ 5. A *prima facie* Title III ADA claim under section (b)(2)(A)(ii) requires that a plaintiff have "requested a reasonable modification in [defendant's] policy or practice which, if granted, would have afforded [plaintiff] access to the desired goods; that the requested modification—or a modification like it—was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003).

Here, defendant's SUMF states that "Internal Medicine Canóvanas Group Corp., is not aware of any evidence that plaintiff, before the filing the Complaint, had expressed discomfort or any physical barriers she allegedly encountered," and properly supports this factual assertion by citing to the responses to plaintiff's Set of Request for Admission. SUMF, **ECF No. 55-1**, ¶ 20. Plaintiff's OSUMF, however, fails to properly oppose this factual assertion, making only a conclusory and deceiving statement that "[p]laintiff Luz Calderón did inform her physician about the incident [with Doris] demonstrating that the accessibility issues were acknowledged and reported," and citing to plaintiff's deposition testimony on the incident with Doris.[6]

If a party improperly controverts facts presented in an SUMF, the court may treat those facts as uncontroverted. *See Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 11 (1st Cir. 2025). The Court "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. L.R. 56(e); *Id.*, at 12 ("[W]hether the court embarks on that burdensome task [of considering materials extraneous to the facts presented] is discretionary—not mandatory."). This improperly controverted fact alone

---

[6] The citation for this fact is not to any relevant section of deposition testimony regarding plaintiff's report to her physician on any ADA-related matter, but instead to the testimony regarding the incident of Doris' rude behavior. *See* **ECF No. 62-2**, Exhibit (Decl. of Luz Calderón) ¶ 20 (citing Deposition of Luz Neris Calderón-Meléndez, **ECF No. 55-2**, Ex. 7, at 90:6-19). This is not an isolated incident of plaintiff's failure to properly substantiate her opposition to defendant's SUMF. Much of plaintiff's OSUMF is based on conclusory assertions, supported only by citations to defendant's expert report, which does not controvert defendant's SUMF. *See, e.g.*, OSUMF, **ECF No. 62-1**, ¶¶ 7.2 (discussing the electric transformer and the ramp (citing Irizarry Report, Item 1)), 9 (discussing repurposing the public sidewalk (citing Irizarry Report, Item 1)), 10 (discussing sidewalk use as parking spaces (citing Irizarry Report)), 12 (discussing positioning of grab bars and parking spaces (citing Irizarry Report)). The OSUMF thus is consistently "supported only by general references" that "fail[] to contradict the proffered facts." *See López-Hernández*, 64 F.4th at 27.

warrants that the Court grant defendant summary judgment based on plaintiff's failure to make out a *prima facie* case of discrimination under Title III of the ADA. The record itself, however, further substantiates that plaintiff never made any request for reasonable modifications to the facilities of Internal Medicine that allegedly violated the ADA.

The only complaint Internal Medicine ever received from plaintiff – which, to be clear, did not constitute a request for a reasonable modification or accommodation – was shortly after December 20, 2021, when she verbally "informed [her] doctor" of an unpleasant encounter with an Internal Medicine employee named Doris, where Doris "prevented [plaintiff] from exiting through the door to the exit to the [accessible] ramp to be able to go to [her] vehicle." Deposition of Luz Neris Calderón-Meléndez, **ECF No. 55-2**, Ex. 7, at 13:4-5; 15:10. This access ramp was one that plaintiff had used during ten visits to the Internal Medicine facilities without any complaints ever lodged. *Id.*, at 12:5-6. When plaintiff complained to her physician, she complained of Doris' behavior and not of any physical barriers. *Id.*, at 15:6-11; 18:24-19:3. Additionally, plaintiff's ADA discrimination claims as articulated in her complaint are based entirely on the "architectural barriers" encountered during the February 3, 2022 visit to Internal Medicine's facilities, and not on the conduct of Internal Medicine's employees. **ECF No. 12**, at 13-20.

When asked at her deposition whether she had ever "experienced any other situation at the location of the premises or facilities of Internal Medicine that . . . [did] not allow [her] to be in the facilities," plaintiff answered "[n]o." Deposition of Luz Neris Calderón-Meléndez, **ECF**

**No. 55-2**, Ex. 7, at 16:15-19. When asked whether the bathroom was accessible or whether there were additional "barriers" at the Internal Medicine facilities, plaintiff responded that in the bathroom, it "was very difficult for [her] to sit down and to stand up because there was no barrier for [her] to hang on to," and that there was no "counter [at the front desk] specialized for persons with disabilities like [her]." *Id.*, at 16:20-22; 17:3-5; 17:10-13; 17:16-17.[7] Then, when asked whether there was "[a]ny other situation" that barred her access to the facilities, she confirmed "that is all." *Id.*, at 27:20-22. Plaintiff neither informed Internal Medicine about the bathroom or the counter nor requested a reasonable modification to either, because when asked whether, "as to the bathroom situation . . . have you ever told Dr. Michelin" about "this specific situation aside from the Doris situation," plaintiff answered "[n]o." *Id.*, at 18:24-19:3.

Both the uncontroverted facts and the facts of the record are clear: Plaintiff did not request reasonable accommodations from Internal Medicine prior to filing her complaint. Thus, the Court holds that plaintiff did not establish a *prima facie* case of discrimination pursuant to Title III of the ADA.[8] Accordingly, Internal Medicine's motion for summary judgment is **GRANTED**.

---

[7] Defendant made modifications to both the bathroom and the counter that brought them into compliance with the 2010 ADAAG, and thus these claims are dismissed as moot. *Supra*, § III.B.

[8] While plaintiff alleges that "there is no legal requirement for a person with a disability to provide prior notice of barriers before filing a complaint[, and t]he ADA does not impose a pre-suit notification requirement on individuals facing accessibility barriers;" it is quite clear from counsel's cross-examination at plaintiff's deposition that counsel was aware of this requirement. OSUMF, **ECF No. 62-1**, ¶ 20. Defendant's examination of plaintiff during her deposition made clear that plaintiff had visited the Internal Medicine facilities a significant number of times prior to the December 21, 2021 incident with Doris and the February 3, 2022 visit alleged in her complaint without complaining of any physical barriers. Plaintiff's counsel, during his cross-examination, kept alluding to "procedures for filing complaints" and "signs or notices at the medical center indicating or suggesting how to file a complaint," yet did so in a generalized and vague manner, without eliciting information about whether any such complaint related to ADA matters or architectural barriers at the Internal Medicine facilities. *See* Deposition of Luz Neris Calderón-Meléndez, **ECF No. 55-2**, Ex. 7, at 30:9-11, 30:1-4, 30:17-19 ("When you verbally expressed your concerns

## IV. Conclusion

The Court finds that plaintiff has failed to make a *prima facie* showing under Title III of the ADA, and that plaintiff's claims regarding Internal Medicine facilities' international symbols of accessibility, counter, and bathroom grab bar are moot. Accordingly, and for the reasons stated above, the Court **GRANTS** defendant's motion to dismiss and for summary judgment at **ECF No. 55** and hereby **DISMISSES** plaintiff's claims **WITH PREJUDICE**.

The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 10th day of September, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**

---

to the doctor, did he suggest you file a formal complaint in writing?"). It must be noted that the only complaint plaintiff ever made was to her doctor about Doris' rudeness, and as discussed *supra*, § III.C, it is quite clear from the record that plaintiff never requested reasonable modifications to the alleged architectural barriers at Internal Medicine's facilities.